**In re Allan W. HANKEL, Debtor.**

**Bankruptcy No. 98–30451.**

United States Bankruptcy Court,
D. North Dakota.

July 9, 1998.

Kip M. Kaler, Fargo, ND, for trustee.

Roger J. Minch, Fargo, ND, for Allan W. Hankel.

### MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court upon the unresolved objections by the Trustee to the Debtor's claim of exemptions.

In his Chapter 7 Petition filed March 23, 1998, the Debtor, Allan W. Hankel (Allan), claimed a homestead exemption in a remainder interest in real property upon which he resides with his mother who holds a life estate. He also, by virtue of his living circumstances, claimed a "head of family" exemption. The Trustee's principal objection is with respect to these exemptions, the charge being that as Allan has no immediate possessory right to the land but only a future interest, he cannot claim a homestead exemption under N.D. Cent.Code § 47–18–01.[1] Also pointing to his living situation, he charges that Allan cannot avail himself of the "head of family" exemption available under N.D. Cent.Code § 28–22–03.

Secondary objections are also made to the amount of the tax refund claimed exempt

---

1. The Trustee also objected to the present value placed upon the remainder interest and after taking evidence, the court by separate order and for the reasons stated in the record found the value to be $77,000.

under N.D. Cent.Code § 28–22–03 and any effort to exempt unscheduled co-op equity credits.

A hearing was held on June 25, 1998.

Before addressing the Trustee's principal objections, the tax and equity credit concerns will be addressed.

### 1.

■ The Trustee, concerned that the actual amount of Allan's tax refund will be over the amount scheduled and claimed as exempt, wants any excess declared property of the estate and non-exempt. All property in which a debtor claims an interest is property of the estate and clearly a tax refund for the 1997 tax year would be included. Allan has declared as exempt a tax refund in the amount of $350. Thus far, any excess would appropriately be an asset of the estate. However, debtors are free to amend their exemptions at any time and it would be premature at this point for the court to conclude that Allan cannot increase the amount of the tax exemption. The Trustee's objection is overruled.

■ The Trustee while conceding Allan may exempt, as he has, the Gwinner Farmer's Elevator stock certificate, the Quad County Co–Op stock certificate and the Farmer's Union Oil Co–Op stock certificate, argues that despite being owner of the stock itself, Allan cannot receive any future equity credit distributions made in consequence of that ownership.

■ Frankly, the Court does not understand the logic of the Trustee's objection. If a debtor successfully exempts a piece of property he exempts all of it including any subsequent accessions, increases, proceeds or profits emanating from that property. Once exempted the property is out of the estate and is of no consequence to the Trustee. The Trustee's objection is overruled.

### 2.

Allan W. Hankel is a single adult male who for his whole life has resided on a 315 acre rural North Dakota farmstead with his parents. For a number of years he leased the property from them and actually farmed it until 1997 when he quit farming and took up other work. His father passed away in 1992 and in December of that year his mother quit claimed the property to him reserving for herself a life estate. Since then he and his mother have continued to live together sharing in the household chores. According to Allan his mother is a reasonably healthy 72 year-old woman who suffers only from controlled diabetes. She self administers her insulin shots but Allan fills the syringes. She has no restricted daily activities and to quote Allan, "is able to take care of herself."

She receives $13,000 per year land rent and $413 per month for social security. From this income she is able to take care of her monthly expenses without any monetary support from Allan and he does not claim her as a dependent for tax purposes.

She no longer drives and is dependent upon Allan for trips into town where together, they grocery shop. Although Allan feels his mother is in good health and able to care for herself, he is concerned if something happened to him that she wouldn't be able to live out in the country by herself.

In his bankruptcy schedules Allan listed his interest in the 315 acres and claimed his remainder interest, now valued at $77,000, exempt as his homestead. This property upon which he resides has for all practical purposes been his consistent place of abode for his whole life as he has no other place to live and has not lived anywhere else.

He also claimed $2,500 in farm machinery sale proceeds exempt under the N.D. Cent. Code § 28–22–03 "head of family" exemption.

### 3.

■ Our discussion of Allan's claim of homestead begins with § 47–18–01 of the North Dakota Century Code defining the limits of the exemption:

> The homestead of any person, whether married or unmarried, residing in this state shall consist of the land upon which the claimant resides, and the dwelling house on the land in which the homestead claimant resides, with all its appurtenances, and all other improvements on the land, the total not to exceed eighty thousand dollars in value, over and above liens

or encumbrances or both. The homestead shall be exempt from judgment lien and from execution or forced sale, except as otherwise provided in this chapter. In no case shall the homestead embrace different lots or tracts of land unless they are contiguous.

It is axiomatic to say that the homestead statutes, as with all exemption statutes, are to be accorded a liberal interpretation. *In re Lippert*, 113 B.R. 576, 578 (Bankr.D.N.D. 1990); *Larson v. Cole*, 76 N.D. 32, 33 N.W.2d 325, 328 (1948). Unlike the laws of many other states, the homestead exemption laws of North Dakota do not, except in the most general of terms, define what kind of house or buildings may comprise the dwelling or appurtenances. Moreover, and critical to this inquiry, the North Dakota exemption laws do not specify as a requirement any particular type of ownership or interest in the land itself, requiring only that the claimant be a resident and reside upon the land. This omission is to be contrasted to the ownership requirement typical of many other states. For example, New York requires that the homestead claimant "own and occupy" the property. N.Y. McKinneys CPLR 5206(a). The courts there interpreting the word ownership, hold the exemption extends only to home owners who have good legal title. *In re Kleinman*, 172 B.R. 764 (Bankr. S.D.N.Y.1994). The Tennessee homestead statutes likewise contain a provision requiring that the real property be owned by the claimant and, as a consequence, courts there hold because a remainder interest in the life-estate of another has no present right of occupancy that no homestead exemption is available. Tenn.Code Ann. § 26–2–301; *In re Lingerfelt*, 180 B.R. 502 (Bankr.E.D.Tenn. 1995).

The Trustee takes the position that a future interest is not an interest sufficient upon which to base a claim of homestead in North Dakota. Jurisdictions with homestead provisions similar to North Dakota have been more willing to extend the exemption to individuals possessed of less than a fee-hold interest. In *Matter of Buzzell*, 110 B.R. 440 (Bankr.Neb.1990), the court allowed the claim to be made by a debtor who had a long-term lease in the real estate and in *In re*

*Dennison*, 129 B.R. 609 (Bankr.E.D.Mo.1991) the court did not consider the fact the debtor held only a remainder interest to be fatal to his claim of homestead. In that case, with facts nearly identical to those at bar, the debtor's grandmother conveyed her home to the debtor reserving for herself a life estate. Although the debtor had lived on the property with her grandmother for many years, she had not been living there for the two years preceding the claim of homestead. The issue before the court was whether the holder of a future interest in property in which she did not reside may claim a homestead under Missouri law (R.S. Mo. § 513.475(1)). The court held that pursuant to Missouri homestead law a claimant must occupy the property or exhibit an intent to occupy coupled with an ability to control or influence the time of occupation.

■ The North Dakota homestead statute, however, says nothing about an interest in land nor does it say anything about occupancy and the Supreme Court of our state has long recognized that the homestead exemption laws do not measure the claim by the quality of the title which the claimant has. Whether it be in fee or merely possessory is immaterial said the court in *First Nat. Bank of Van Hook v. Zook*, 50 N.D. 423, 196 N.W. 507 (1923), so long as the claimant has a possessory right. In *Helgebye v. Dammen*, 13 N.D. 167, 100 N.W. 245 (1904) the court held that any equitable ownership or title is sufficient for the claim to stand provided it is coupled with possession and occupancy.

■ Does Allan have an interest in the land? A remainder interest in land although a future interest is nonetheless an interest and under the laws of North Dakota it is a vested interest when the person entitled to immediate possession is in being. N.D. Cent.Code § 47–02–15. A person holding a vested future interest may transfer title in the same fashion as present interests. N.D. Cent.Code § 47–02–18. Thus, it seems clear that Allan does have an interest in the land cognizable under the homestead exemption statute.

The question remains whether he "occupies" or is "in possession" of the property.

Although the Supreme Court in several early cases made this a requirement, the Court has never quantified the meaning of either term and has not discussed the meaning of the term "reside" as used in the statute itself. The thrust of the Trustee's argument is that whether vested or not, a person possessed only of a future interest has no present right or claim to occupancy and thus cannot maintain a homestead claim. Allan, on the other hand, emphasizes that the statute says nothing of occupancy but only requires that the claimant "reside" on the land.

Granted, the Supreme Court has used the term "occupancy" in several of its decisions but has not defined the term. Moreover, the homestead statute itself does not contain the term "occupancy" but instead uses the word "reside." In the context of the North Dakota homestead exemption statute are they synonymous terms? Is there a distinction to be recognized? In North Dakota is occupancy for the purpose of homestead something different or greater than residency?

The term "occupancy" may connote a greater estate or right to possession than the word "reside." The dictionary definition is taking and holding possession of real property. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged 1981). Some courts have held the term to mean the actual use, possession or control of property. *Redevelopment Authority of Allegheny County v. Stepanik*, 25 Pa.Cmwlth. 180, 360 A.2d 300, 302 (1976). Although the North Dakota Supreme Court has used the word occupancy in its *Helgebye* decision, *supra*, several years later in *Smith v. Spafford*, 16 N.D. 208, 112 N.W. 965 (1907) it said, "A person is not entitled to claim his land exempt as a homestead unless he is *residing* thereon." (emphasis added). The notion of occupancy as a requirement for homestead does not again present itself in a North Dakota decision. The Court has, however, gone on in later cases to define the word reside. Relying upon the Webster's definition, the Court in *Krumenacker v. Andis*, 38 N.D. 500, 165 N.W. 524 (1917), said it is the, "act of residing, abiding or dwelling in a place for some continuance of time; the place where one resides; an abode, a dwelling or

habitation, especially a settled or permanent home or domicile; the place where anything rests permanently." Again, in *State v. Moodie*, 65 N.D. 340, 258 N.W. 558 (1935), it said the word "reside" means the place a person remains when not elsewhere and most recently in the 1983 decision of *Dietz v. City of Medora*, 333 N.W.2d 702 (N.D.1983), it said the term means the place where a person has established his home, where he is habitually present and where he returns to from business or pleasure. It is worthwhile to note that in *Dietz* the Court said the term "residence" should be understood in its ordinary sense.

From the language of § 47–18–01 and a reading of the available North Dakota case law, this Court does not believe the North Dakota Supreme Court by use of the word "occupancy" in the *Helgebye* decision meant to impose any greater standard for a homestead claimant than would be required by the ordinary meaning of the term "reside." That for homestead purposes in North Dakota, the terms are synonymous and for a homestead claim to stand, the claimant need only live on the property intending it as his home and permanent place of abode. Allan plainly meets this requirement. He has habitually lived with his mother on the subject property for many years treating it as his home. He has no other place to live–no other home, no other place to go when not at work or otherwise away. To find otherwise would require the Court to ignore the facts and conclude Allan does not live at the place.

For the foregoing reasons, the Trustee's objection to the Debtor's claim of homestead is overruled and the exemption premised upon N.D. Cent.Code § 47–18–01 may stand.

4.

We turn now to the Trustee's second principal objection bearing on the question of whether Allan qualifies as a head of family under N.D. Cent.Code § 28–22–03. This section affords an additional absolute exemption of up to $5,000 for a claimant who qualifies as a "head of a family." This term is defined by § 28–22–01.1 as:

1. The husband or wife when the claimant is a married person.

2. Every person who has residing with him and under his care and maintenance, any of the following:

(a) his child or the child of his deceased spouse, whether by birth or adoption.

(b) a minor brother or sister or the minor child of a deceased brother or sister.

(c) a father, mother, grandfather, or grandmother.

(d) the father or mother or grandfather or grandmother of a deceased husband or wife.

(e) any other of the relatives mentioned in this section who have attained the age of majority and are unable to take care of or support themselves.

3. Every person who provides support for unmarried minor children of a pervious marriage of the person, even though the children do not reside on the premises with the person.

For purposes of the Trustee's objection, the operative term is "under his care or maintenance." The Trustee argues that this term means having a person under your care that is unable to care for themselves. Allan would have the Court view the requirement more expansively believing the facts demonstrate that he takes care of his mother and is totally responsible for maintaining her present living arrangements, health, and lifestyle.

Few cases have defined the word "care and maintenance" but those that have give them their ordinary and commonly understood meaning. The term "care" or "care for" is recognized as being synonymous with physical custody and the word "maintenance" means legal custody or financial responsibility. Taken together, both suggest that the person cared for is dependent of the exemption claimant. *In re Lawley*, 130 B.R. 568, 570 (Bankr.E.D.Cal.1991). Further amplification is lent to this construction by the additional language of subsection 2(e) extending the head of family status to claimants providing care and maintenance to a relative "unable to take care of or support themselves." This phrase has been defined to mean persons who are physically or mentally incapable of caring for themselves, or suffering from a legal disability. *In re Dore*, 124

B.R. 94, 97 (Bankr.S.D.Cal.1991). From the facts, the Court cannot find Allan's mother to be under any particular disability physically, mentally or financially sufficient to place her under his "care or maintenance," within the meaning of the statute. Allan himself testified that she is able to take care of herself and he provides her with no financial support. Although he helps out with grocery shopping, transportation and the filling of her insulin syringes, such assistance does not rise to the level of "care and maintenance." In other words, Allan's mother is not his dependent.

For the foregoing reasons Allan cannot be regarded as a "head of family" and the exemption claimed under § 28–22–03 is disallowed.

5.

In sum, based upon the foregoing, the Trustee's objection to Allan's claim of homestead is overruled and the exemption stands. The Trustee's objections bearing on the issue of tax refund and future co-op equity credit distributions are overruled for the reasons stated. The Trustee's objection to Allan's head of family exemption is sustained and the exemption is disallowed.

**SO ORDERED.**